UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOUSAM ABOUSAMRA,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. 21-12918 |
| v. | | Thomas L. Ludington<br>United States District Judge |
| COMMISSIONER OF<br>SOCIAL SECURITY, | | David R. Grand<br>United States Magistrate Judge |
| | Defendant. | |
| _____/ | | |

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 18)

Plaintiff Housam Abousamra ("Abousamra") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 15, 18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Abousamra is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **GRANTED**, Abousamra's Motion for Summary Judgment **(ECF No. 15)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Abousamra was 28 years old at the time of his amended alleged onset disability date of January 25, 2018. (ECF No. 9-5, PageID.393-95, 424). At 5'6" tall, he weighed approximately 250 pounds during the relevant time period. (ECF No. 9-6, PageID.431). He completed up to two years of college. (*Id.*). Previously, Abousamra worked as a cashier, cook, and a Tim Hortons supervisor. (*Id.*). He currently lives with his parents at their house. (*Id.*, PageID.472). Abousamra's alleged disabling conditions include bipolar disorder, depression, schizoaffective disorder, drop foot, and back pain. (*Id.*, PageID.431).

After Abousamra's application for SSI was denied at the initial level on November 14, 2019 (ECF No. 9-4, PageID.266-69), and his reconsideration request was denied on May 13, 2020 (*id.*, PageID.319), he timely requested an administrative hearing, which was held on October 15, 2020, before ALJ Kevin Fallis (ECF No. 9-2, PageID.81). Abousamra, who was represented by attorney John Walt, testified at the hearing, as did vocational expert ("VE") Heather Benton. (*Id.*). On December 22, 2020, the ALJ issued a written decision finding that Abousamra is not disabled under the Act. (ECF No. 9-2, PageID.55-74). On October 28, 2021, the Appeals Council denied review. (*Id.*, PageID.35-41). Abousamra timely filed for judicial review of the final decision on December 14, 2021. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Abousamra's medical record, function and disability reports, and testimony as to his

conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.      The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work

3

experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Abousamra is not disabled under the Act. At Step One, the ALJ found that Abousamra had not engaged in substantial gainful activity since January 25, 2018. (ECF No. 9-2, PageID.58). At Step Two, the ALJ found that he had severe impairments of left sided foot drop with atrophy of the left calf, thoracic kyphosis, history of asthma, obesity, schizophrenia, bipolar disorder, adjustment disorder with depressed mood, and polysubstance use disorder. (*Id.*). At Step Three, the ALJ found that Abousamra's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Abousamra's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following additional limitations:

> never climb ladders ropes or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl; occasional use of foot control with the left lower extremity; must have option to sit for 30 minutes after standing for 15 minutes; limited to jobs that can be performed while using a hand held assistive device required for ambulation; must avoid concentrated exposure to extreme cold, wetness, and vibration; must avoid all use of hazardous moving machinery; and

4

> must avoid all exposure to unprotected heights; he is limited to simple
> routine repetitive tasks performed in a work environment free of fast
> paced production requirements involving only simple work related
> decisions and routine workplace changes; and with only occasional
> interaction with the public coworkers supervisors.

(*Id.*, PageID.61).

At Step Four, the ALJ found that Abousamra has no past relevant work. (*Id.*, PageID.72-73). At Step Five, the ALJ found, based in part on the VE's testimony, that given Abousamra's age, education, work experience, and RFC, he was capable of performing unskilled sedentary work as an accounting clerk (55,000 jobs nationally), office clerk (80,000 jobs), and order clerk (15,000 jobs). (*Id.*, PageID.73-74). As a result, the ALJ concluded that Abousamra was not disabled under the Act. (*Id.*, PageID.74).

### C.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high.  Substantial evidence … is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In his motion for summary judgment, Abousamra argues that the ALJ erred in (1) suggesting that his psychiatric hospitalizations were only caused by substance abuse; and (2) finding that his conditions did not meet or medically equal Listing 12.03(C).  (ECF No.

6

15, PageID.1658-66).  These arguments are addressed in turn below.

>    1.   *Abousamra Fails to Show Reversible Error in the ALJ's Consideration of the Medical Record in Determining the RFC*

Abousamra first argues that certain statements in the ALJ's decision "suggest" that the ALJ "attempted to downplay the overall severity of [his] mental impairment" and that the ALJ "felt that any limitations presented by the record resulted from substance abuse, rather than [] mental illness."  (ECF No. 15, PageID.1658-59).  Specifically, Abousamra points to the ALJ's statements that his mental status findings were frequently normal when he was "clean and sober" and that his hospital treatments were "generally caused by substance abuse," which statements he contends were made "against Agency procedures and [are] not supported by substantial evidence."  (*Id.*).

The Act provides in relevant part that "[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  The Commissioner implemented this standard by enacting 20 C.F.R. §§ 404.1535 and 416.935, which "clearly" require that the five-step sequential evaluation process be followed in the adjudication of disability "before any consideration is given to whether drug addiction [or alcohol abuse] is the cause of such disability."  *Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D. Tenn. 2004) (*citing Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir.2001)); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir.2003); *Stroud v. Comm'r of Soc. Sec.*, 2011 WL 4576032, at *11-12 (E.D. Mich. 2011); *Kellett v. Colvin*, No. 13-12884,

7

2015 WL 181650, at *2 (E.D. Mich. Jan. 14, 2015).  In other words, "[t]o find that drug addiction is a contributing factor material to the determination of disability without first finding the [plaintiff] disabled . . . is to put the cart before the horse." *Williams*, 338 F.Supp.2d at 862.  "If the five step sequential evaluation process, without removing the effects of substance abuse disorders from consideration, indicates that the plaintiff is not disabled then there is no need to continue with the substance abuse materiality analysis of 20 C.F.R. §§ 404.1535 and 416.935." *Stroud*,  2011 WL 4576032, at *11-12 (citing *Brueggemann*, 348 F.3d at 694–95 ("If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.")).

Relevant here, in assessing one of the "paragraph B" criteria, the ALJ stated:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation.  The claimant alleged that he has difficulties handling stress, dressing, bathing, managing his mental health symptoms, and getting along with others. []  However, the claimant also stated that he is able to handle self-care and personal hygiene, do light household tasks, do yardwork, handle changes in routine, drive, shop, use the computer, watch YouTube videos, edit videos, and get along with others. [] ***Additionally, the treatment record revealed that when he is clean and sober, his mental status findings are frequently normal as discussed below.***  Therefore, the undersigned finds that the evidence established moderate limitation as for adapting or managing oneself.

(ECF No. 9-2, PageID.60) (emphasis added).

Second, in assessing the "paragraph C" criteria, the ALJ stated:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  Specifically, the treatment history documented two years of mental health treatment including medication, and

emergency department and hospitalizations for mental impairment. *However, the hospital treatment was generally caused by substance abuse.* In addition, the record showed only three psychotherapy sessions in January 2018, March 2018 and April 2018 and he later reported he did not need therapy, as it did not do anything. Additionally, the claimant did not reside in a highly structured setting that was ongoing; for example, he lives with his family []. The claimant has more than minimal capacity to adapt to changes in the environment and to demands that were not already a part of daily life. For example, he reported the possibility of moving to California to live with his brother []. Moreover, the record established that claimant could handle self-care and personal hygiene, do light household tasks, do yardwork, handle changes in routine, drive, shop, use the computer, watch YouTube videos, edit videos, and get along with others []. *Additionally, the treatment record revealed that when he is clean and sober, his mental status findings are frequently normal as discussed below*.

(ECF No. 9-2, PageID.60) (emphasis added).

Finally, in assessing Abousamra's subjective complaints about his symptoms, the

ALJ stated:

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the overall record. While the claimant alleged disability due to bipolar disorder, depression, schizoaffective disorder, foot drop, and back pain, as indicated above, the record established left sided foot drop with atrophy of the left calf; thoracic kyphosis; history of asthma; obesity; schizophrenia; bipolar; and adjustment disorder with depressed mood as severe impairments. However, the record overall does not support the extent of alleged limitations. For example, *the mental status findings were frequently normal when he was clean and sober.* Moreover, the residual functional capacity assessment incorporates the abnormal clinical findings with corresponding mental residual functional limitations. . . . Accordingly, the undersigned finds the residual functional capacity assessment is appropriate.

(ECF No. 9-2, PageID.70) (emphasis added).

A review of the above statements reflects that, at a minimum, the ALJ considered that the medical record contains certain treatments and abnormalities stemming at least in part from substance abuse. The Commissioner responds, however, that not only can "a reasonable mind [] agree with the ALJ's statements" on a factual basis, but that, even assuming an alleged *procedural* error, there was no *reversible* error because "the ALJ spelled out that [Abousamra] was not disabled even considering [drug and alcohol addiction], and that the RFC took *all* mental findings into account." (ECF No. 18, PageID.1686-95) (emphasis in original); *see, e.g., Wyatt v Comm'r of Soc. Sec.*, No. 1:16-cv-938, 2017 WL 3224666, at *18 (S.D. Ohio July 31, 2017) (finding that while remand "may" be appropriate if an ALJ "improperly conflates the materiality analysis with the initial sequence evaluation of disability[,] . . . any possible error on the record presented appears to have been harmless."); *Watkins v. Astrue*, No. CIV. 09-5064-RHB, 2010 WL 3360428, at *4 (D.S.D. Aug. 23, 2010) (finding ALJ's failure "to follow the procedure set forth in § 404.1535" amounts "only to harmless error"). Abousamra, on the other hand, asserts that such errors "are not harmless" because "it is apparent" from the ALJ's statements that the ALJ "largely discounted the abnormalities noted throughout the record – especially those noted during his hospitalizations – as mostly products of substance abuse, not mental illness," and that "if the ALJ wrote off [his] hospitalizations . . . then it's unclear if [the ALJ] ever accounted for this evidence in the RFC assessment." (ECF No. 15, PageID.1661).

After careful review of the ALJ's decision, the Court concurs that Abousamra has not shown that any alleged error amounts to more than harmless error.

As an initial matter, the mere fact that the ALJ may have attributed certain abnormal findings to substance abuse does not necessarily mean the ALJ placed undue weight on substance abuse when determining Abousamra's mental limitations.  The ALJ is *required* to consider "the gross total of a claimant's limitations, *including the effects of substance abuse disorders*" in the initial sequence evaluation of disability.  *Brueggemann*, 348 F.3d at 694-95 (emphasis added).  Thus, in reviewing for reversible error, the salient question here is whether the ALJ's decision reasonably reflects that the ALJ "took *all* mental findings into account" (as the Commissioner contends) or "largely discounted the abnormalities noted throughout the record . . . as mostly products of substance abuse" (as Abousamra contends).  As discussed below, the ALJ's decision reflects a thorough discussion and fair consideration of relevant abnormal findings in the record irrespective of whether they involved mental disorders and/or substance use in fashioning the RFC and finding Abousamra was not disabled.

First, the ALJ made several statements clearly expressing that he considered evidence of mental abnormalities and limiting effects stemming from Abousamra's mental illnesses *separate from* his consideration of Abousamra's substance use.  At the outset of the ALJ's lengthy discussion of how he determined the RFC, the ALJ stated that "[t]he record established . . . schizophrenia; bipolar; and adjustment disorder with depressed mood as severe medically determinable impairments," omitting Abousamra's polysubstance use disorder, despite earlier explicitly recognizing it as an additional "severe impairment."  (ECF No. 9-2, PageID.58, 63).  The ALJ then went on to provide a detailed discussion of the salient medical records, which in some instances included findings

regarding Abousamra's drug use and addiction.  (*Id.*, PageID.63-72).  Towards the end of the ALJ's discussion, he noted that the record "also evidence[d] substance use – alcohol, cocaine, and marijuana," concluding that it was "*not material*" to his finding of no disability.  (ECF No. 9-2, PageID.63, 72) (emphasis added) ("However, the undersigned finds it is not material.").[1]  Moreover, while the ALJ stated that mental status findings were "frequently normal" when Abousamra was "clean and sober" in assessing his subjective complaints, it is significant that ALJ nonetheless made clear in the very next sentence that "the [RFC] assessment incorporates the ***abnormal clinical findings with corresponding mental residual functional limitations***."  (ECF No. 9-2, PageID.70) (emphasis added).

Second, Abousamra does not point to a specific statement in the ALJ's decision in which the ALJ expressly *discounted* an abnormal mental finding as a product of substance abuse.[2]  Rather, Abousamra contends that it is "unclear" from the decision whether the ALJ "ever accounted for" specific evidence that he was "hospitalized . . . for schizoaffective disorder," or that he was "variably guarded, suspicious, tangential, circumstantial,

---

[1] This statement from the ALJ also belies Abousamra's contention that the ALJ suggested his condition "was materially affected by substance abuse."  (ECF No. 15, PageID.1661).

[2] For instance, the ALJ's statements here fall well short of the type of cases in which ALJs went as far as rejecting medical opinions or discounting GAF scores based on substance abuse.  *See, e.g.*, *Parker v. Comm'r of Soc. Sec.*, No. 12-CV-14316, 2014 WL 902692, at *10-11 (E.D. Mich. Mar. 7, 2014) (ALJ "rejected" the opinions of a psychological consultant because diagnosis of schizoaffective disorder appeared to be based on plaintiff's report of intermittent hallucinations, which the ALJ noted only occurred "when he was using drugs," and discounted low GAF scores because "these were also during exacerbations of his symptoms due to substance abuse" and therefore "not indicative of the claimant's usual level of mental functioning"); *Brueggemann v. Barnhart*, 348 F.3d 689, 693–95 (8th Cir. 2003) (ALJ gave "little weight" to treating psychiatrist's opinion that claimant had "poor or no ability to deal with stress" based upon ALJ's opinion that claimant's substance abuse was at the root of his problems).

constricted, paranoid, delusional, and impulsive," and "displayed poor insight, memory, and cognition." (ECF No. 15, PageID.1658, 1661). Abousamra's argument lacks merit, however, as the ALJ's discussion of the medical evidence reflects a thorough and fair consideration of relevant mental abnormalities in the record irrespective of their cause.

For instance, the ALJ considered at the outset that Abousamra was assessed with "alcohol dependence" and "paranoid schizophrenia" during a psychotherapy session on January 19, 2018, but noted that "mental status findings showed 'No significant change.'" (ECF No. 9-2, PageID.63; *see* ECF No. 9-7, PageID.831 ("No significant change" in "Thought process/orientation," "Behavior/functioning," "Mood/affect," "Substance use/addictive behaviors")). The ALJ discussed an office progress note from that same day, noting that Abousamra tested "positive for THC" but that his "mental status findings were all within normal limits." (ECF No. 9-2, PageID.63; *see* ECF No. 9-7, PageID.834 ("Negative" for "Difficulty concentrating, feeling down, depressed, or hopeless, feelings of guilt, insomnia, little interest or pleasure in doing things and suicidal ideation"; and "Normal" for "Orientation" x4 and "Appropriate mood and affect")).

The ALJ considered that Abousamra was admitted to the emergency department ("ED") on January 25, 2018 for behaving "uncontrollable and delusional at times" with a "long [history] of mental issues and drug addiction." (ECF No. 9-2, PageID.63). The ALJ noted that Abousamra seemed "paranoid," "did not know why he was in the ED," kept "stating he's here because someone stole his phone," "need[ed] psychiatric admission," and had to be monitored "in a seclusion room" where he "frequently threw his blanket at the camera and hit the door repeatedly stat[ing] he wanted to go home" and even "elop[ed]

from the unit" one night.  (ECF No. 9-2, PageID.63) (emphasis added).  However, the ALJ

noted that on discharge just a few days later on February 2, 2018, Abousamra's "mental

status findings were all normal," he was "very bright and pleasant" and denied "suicidal

and homicidal ideation," "auditory and visual hallucinations and delusions," or "anxiety

and depression," and that he was discharged with a "primary" diagnosis of "bipolar, current

episode manic severe with psychotic features," a "secondary" diagnosis of "substance use

disorder, cocaine, ETOH, THC," and a GAF score of 55 indicating moderate symptoms.

(ECF No. 9-2, PageID.63-64; *see* ECF No. 9-7, PageID.798, 1158-59 (Mental Status Exam

finding "Good" eye contact, "Cooperative" Attitude/Behavior, "euthymic" mood, "full

affect & congruent with mood," psychomotor activity "Within Normal Limits," speech

"WNL," no hallucinations, "Organized" thought processes, "Adequate"

attention/concentration and impulse control, "Judgment" WNL, and "Improved" insight).

The ALJ also noted that Abousamra's discharge papers included a letter stating that he "is

able to return to work/school with *no restrictions* on February 5, 2018."  (ECF No. 9-2,

PageID.64; ECF No. 9-7, PageID.798) (emphasis added).

    The ALJ considered that Abousamra was assessed with "alcohol dependence,

uncomplicated" during an office visit on March 6, 2018, and that he exhibited "Flight of

ideas" but otherwise a mental status "within normal limits."  (ECF No. 9-2, PageID.64; *see*

ECF No. 9-7, PageID.826 ("Normal" findings for "Orientation" x4, "Appropriate mood

and affect," "No pressure speech," "No suicidal ideation," but positive for "Flight of

ideas.")).  The ALJ also considered a follow-up visit on April 4, 2018, during which

Abousamra exhibited "Poor insight" and "Poor Judgment," but that, again, his other

"mental status findings were all within normal limits . . ."  (ECF No. 9-2, PageID.64 (emphasis added); *see* ECF No. 9-7, PageID.821) ("Normal" psychiatric findings except "Poor" insight and judgment)).  These records indicate that Abousamra was exhibiting only "mild depression."  (ECF No. 9-7, PageID.817-18).

The ALJ discussed Abousamra's hospitalization on June 5, 2018, when his family brought him to the ED after he "had been using drugs," "gave [the] car away," and was "missing for past 5 days."  (ECF No. 9-2, PageID.64).  The ALJ noted that "Dr. Green" determined there was "no need for a full psych eval" and had only requested "substance abuse resources" for Abousamra.  (*Id.*; *see* ECF No. 9-7, PageID.1118 ("Per Dr. Green no need for full psych eval, Dr. Green requesting patient have substance abuse resources as he has been using crack for 5 days . . ."); *see also* ECF No. 9-7, PageID.1116 ("oriented to person, place, and time," "does not appear ill," "No distress," "Negative for confusion"). The ALJ still noted that Abousamra reported his "mental health" was "ok," that he had "no concerns," and that he was "discharged home the same day with substance abuse use resource."  (ECF No. 9-2, PageID.64; *see* ECF No. 9-7, PageID.1120).

The ALJ discussed Abousamra's hospitalization a month later on July 13, 2019 for a finger laceration after he "broke a window with his right hand" during an argument with his parents.  (ECF No. 9-2, PageID.64).  The ALJ considered that Abousamra was "agitated" and was moved to the Behavioral Health Unit, where he reported "anger issues" but "no depression and anxiety," "denie[d] any SI, HI, or Hallucinations," and was "able to return home."  (*Id.*, PageID.64-65) (emphasis added).  The ALJ noted that Abousamra "admits to ETOH and cocaine" upon admission, but that "lab results [were] negative for

15

ethanol," that he was diagnosed with "schizoaffective disorder" and "GAF 51-[6]0 moderate symptoms," and that he was "discharged [] on the same day" with a follow up scheduled.  (*Id.* (emphasis added); *see also* ECF No. 9-7, PageID.1221-22 (Exam finding "anxious and expressionless" behavior, "anxious and constricted" mood, "somewhat inadequate" coping skills and "poor" impulse control, but otherwise "neat/clean" appearance, "normal" speech, "coherent, logical, oriented" thought process, "grossly intact" cognition, "fair" insight and judgment)).

The ALJ considered Abousamra's treatment "for mental health impairments" at "Hope Network" between July 2019 through January 22, 2020 "for schizoaffective disorder, depressive type," noting that "mental status findings" during this treatment period frequently indicated he was "cooperative pleasant and kind, alert and oriented x4; dressed and groomed fine; coherent, relevant, spontaneous, mood, thoughts are stable; and denied SI/HI/VH/AH."  (ECF No. 9-2, PageID.65).  The ALJ also noted that, on August 2, 2019, Abousamra reported that he was doing well in terms of his "psychiatric stability" and did not presently need a therapist, (*see* ECF No. 9-7, PageID.1209 ("I have bee[n] coping good . . . I don't need a therapist right now.  I am good right now)), and that he continued to do well through September 25, 2019, and January 22, 2020 (*see* ECF No. 9-7, PageID.1229 ("Been doing good now. Denies S/I, H/I, Aud/vis hallucinations"); ECF No. 9-8, PageID.1504-05 ("Dressed, groomed fine, Alert, Ori[e]ntedx3, Pleasant, Cooperative, Coherent, relevant, spontaneous, Mood, thoughts are stable, denies S/I, H/I, Aud/vis hallucinations")).

16

The ALJ discussed a consultative exam on October 22, 2019, noting that Abousamra's "history of schizophrenia . . . has stabilized with Abilify," and that he is able to drive, do light household chores and yard work, shop for groceries, and edit videos. (ECF No. 9-2, PageID.66; ECF No. 9-7, PageID.1243).  The ALJ also considered that the "appearance/mental status findings include he is cooperative in answering questions and following commands; mental status is normal; he is appropriately dressed; his immediate/recent/remote memories are intact with normal concentration; his insight and judgment are both appropriate; he provides good effort on exam," that he "reports a history of schizophrenia," but "cognitively [] appears stable and appropriate today" and "is controlled on Abilify . . ."  (ECF No. 9-2, PageID.66; *see* ECF No. 9-7, PageID.1244, 1247).

The ALJ discussed Abousamra's hospitalization on October 25, 2019, for "positive criteria for systemic inflammatory response syndrome" after he "became unresponsive" while at work laying flooring and the EMS considered "possible overdose secondary to taking narcotics, attempted Narcan with little response, started CPR on scene," and an exam indicated he was "non-responsive, heart tachycardia and covered in blood vomit." (ECF No. 9-2, PageID.67).  The ALJ noted Abousamra was "transferred to U of M due to his critical condition" and underwent "long-term video-EEG monitoring study" and intubation until early November 2019.  (*Id.*).

The ALJ considered that, in February 2020, Abousamra continued to be assessed with "bipolar depression," "chronic schizophrenia," "depression," and "insomnia," but that

psychiatric exams on February 10th and March 13th reflected "normal" judgment, insight, and recent/remote memory. (*Id.*, PageID.67-68; *see* ECF No. 9-8, PageID.1524, 1547).

The ALJ discussed Abousamra's participation in a "Partial Hospitalization Program" between July 23, 2020 through August 7, 2020, noting that "initial mental status exam findings" showed Abousamra had a "sad and irritable mood," "restricted affect," "tangential" thought content and process, "distractible" attention span and memory, "poor attention and focus," and "poor" judgment, and his "intake diagnosis" was "bipolar I disorder, mixed episode severe with psychosis features[,] and GAF 40." (ECF No. 9-2, PageID.68; *see* ECF No. 9-8, PageID.1591 (initial exam dated 7/23/20)). However, the ALJ stated that "subsequent" mental status findings "show[ed] improvement ***albeit there are abnormal findings***," with "improved findings" including "affect full range," "calm" and "linear" mood, "logical/goal directed" thought process, "fair" judgment and insight, "no delusions," and "zero" flight of ideas. (ECF No. 9-2, PageID.68; *see* ECF No. 9-8, PageID.1592-1600) (emphasis added)). The ALJ discussed that, after attending "10 program sessions," Abousamra was discharged after having "achieved maximum benefit from the program," his "irritability, easy frustration levels improved," and he was discharged with a diagnosis of "bipolar I disorder mixed." (ECF No. 9-2, PageID.68; ECF No. 9-8, PageID.1588 (Treatment Summary Form on discharge stating, "Patient has achieved maximum benefit from program," "Client's irritability, easy frustration levels improved," and "[r]eports no suicidal or homicidal ideations").

The ALJ then discussed urgent care visits in August 2020 for an injury to his right hand and in October 2020 after falling down the stairs, and that during these visits,

18

Abousamra was "in no apparent distress," had "normal level of hygiene," was "alert and oriented x3," "playful," and "interactive." (ECF No. 9-2, PageID.69-70). The ALJ also considered an ED visit in September 2020 for cough and congestion, noting Abousamra had a "history [of] bipolar and polysubstance abuse," but that exam findings showed he was "not in acute distress," had "normal appearance," mood, and behavior, was "alert and oriented x3," and had psychiatric findings which were all within normal limits. (ECF No. 9-2, PageID.69; ECF No. 9-8, PageID.1608-09, 1613 ("Negative for confusion," "normal" mood, affect, and behavior, "not in acute distress," "Normal appearance")).[3]

Finally, the ALJ found unpersuasive certain portions of two medical opinions from state agency psychological consultants Mary Stelma, Ph.D. and Jerry Csokasy, Ph.D. on November 19, 2019, and May 12, 2020, because they opined *less restrictive* limitations in Abousamra's mental capacity "to understand, remember, or apply information" and "to adapt or maintain oneself." (ECF No. 9-2, PageID.71; *see* ECF No. 9-3, PageID.181, 231-32 (opinions from state psychological consultants Mary Stelma, Ph.D. and Jerry Csokasy, Ph.D. opining that Abousamra had only "mild" limitations in understanding, remembering, or applying information, as well as adapting or maintaining oneself, and "moderate"

---

[3] Abousamra points out in a footnote that "the ALJ did not discuss the November 2017 hospitalization in his decision, though there is no reason records from this hospital visit would not be relevant. While it's true that this visit preceded [his] onset date by about two months, where there is no obvious changes in [his] condition, and where the records from the [pre-onset] date largely reflect the same sorts of complaints and conditions in the post-onset evidence, the ALJ should not have ignored this evidence." (ECF No. 15, PageID.1659) (quotations omitted). However, aside from conclusory assertions that this visit was "relevant" and that "there [was] no obvious changes" in his condition, Abousamra fails to explain in any detail how particular findings during this specific hospitalization support such assertions, much less how the ALJ's failure to discuss this particular record prejudiced him in any way.

limitations in interacting with others, as well as concentrating, persisting, or maintaining pace.). Specifically, the ALJ determined that "the medical treatment record, including the clinical exam findings, other opinion, as well as new evidence ***supports more limited abilities*** in his ability to understand, remember, or apply information, as well as his abilities to adapt or maintain oneself." (ECF No. 9-2, PageID.71) (emphasis added). It can be reasonably inferred from the ALJ's assessment of the state psychological consultants' mental RFC findings that the ALJ thoroughly considered the abnormal mental findings serving as the basis for their opinions, but nonetheless independently determined that the record evidence consisted of abnormalities indicating Abousamra required even *more restrictive* mental limitations than those assessed by the state consultants. (*See, e.g.*, ECF No. 9-3, PageID.224-25 (Dr. Csokasy considering, among other evidence, "schizoaffective DO," "inappropriate mood and affect depressed," "affect flat," "Hallucinations auditory," "Severe manic bipolar I d/o with psychotic features," "admits to ETOH and cocaine," "Flight of ideas," "Paranoia," "Poor insight," "Poor insight/judgment," hospitalization on July 13, 2019 because "broke window in anger," hospitalization on "1/26/18" for uncontrollable, delusional, paranoid, and suspicious behavior, etc.). [4]

---

[4] The Court notes that the record also includes an opinion from Dr. Joshua E. Nnanji, M.D. finding "marked" or "extreme" limitations in understanding, remembering, and carrying out instructions, but also that Abousamra had *no* limitations in interacting appropriately with supervision, co-workers, and the public or responding to changes in the routine work setting. (ECF No. 9-8, PageID.1567-69). In any event, the ALJ found the opinion to be unpersuasive because the "treatment record, clinical exam findings, other opinions, and hearing level evidence support he is not as limited in his ability to understand *et al*, and is more limited in his ability to interact appropriately with supervision, *et al*, than having no limitations whatsoever" (ECF No. 9-2, PageID.72), and Abousamra does not challenge the ALJ's evaluation of this or any other medical opinion.

Considering all of the above, the ALJ's thorough and reasoned discussion of the evidence reflects that the ALJ reasonably accounted for "the abnormalities noted throughout the record" without discounting such findings from consideration as "mostly products of substance abuse." *See Brueggemann*, 348 F.3d at 694-95 (stating the ALJ must first consider whether the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show a disability); *Plummer,* 2018 WL 1225140, at *4 ("the ALJ did indicate that some of Plaintiff's impairments had lessened in severity due to the remission of her drug addiction.  However, there is no indication that the ALJ made Plaintiff's RFC less restrictive <u>due to</u> her substance addiction.  Indeed, as the Magistrate Judge noted, 'the ALJ determined that Plaintiff is not disabled, even when considering the effect of her drug addiction and/or alcoholism.'").  Notably, Abousamra has not meaningfully explained, much less proven, how the abnormal findings he contends the ALJ discounted would necessitate more than the "moderate" mental limitations the ALJ assessed and incorporated into the RFC.[5]  *See Lee v. Comm'r of Soc. Sec.*, No. 19-10337,

---

[5] As the Commissioner notes, the ALJ's mental RFC finding is supported by substantial evidence based on a litany of evidence that the ALJ discussed, which reflect no more than moderate mental status limitations during the relevant period.  (*See, e.g.*, ECF No. 9-8, PageID.1600 ("doing well and feels ready for discharge," "Pt has achieved max benefit of program" in August 2020); *id.*, PageID.1592 (affect "Full Range (Appropriate); affect "Logical/Goal Directed"; insight "Fair"; mood "Euthymic"; judgment "Fair" in July 2020); *id.*, PageID.1542, 1547 ("Normal" insight, judgment, recent and remote memory in February and March 2020); *id.*, PageID.1504-05 ("Been doing good now" and "Dressed, groomed fine, Alert, Orientedx3, Pleasant, Cooperative, relevant, spontaneous, Mood, thoughts are stable, denies S/I, H/I, Aud/vis hallucinations" in January 2020); ECF No. 9-7, PageID.1229-30 (similar findings in September 2019); *id.*, PageID.1211 ("denied SI/HI/VH/AH at this time," "presented to be cooperative and kind," "appeared to be alert and oriented x 4" in August 2019); *id.*, PageID.826 ("Normal" psychiatric findings except for "Flight of idea" in March 2018); *id.*, PageID.1160-61 ("appropriate" affect/mood in "normal range," "cooperative" behavior, "no delusions," "good" eye contact, ADLs "performed independently," but "anxious" mood and "tangential" speech in February 2018).  The ALJ also considered

2020 WL 1139710, at *6 (E.D. Mich. Mar. 9, 2020) (stating the claimant "bears the burden of proving the existence and severity of limitations caused by [his] impairments" and "that he has a more restrictive RFC than that assessed by the ALJ") (citing *Jones*, 336 F.3d at 474, and *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).   As such, Abousamra fails to show any reversible error in the ALJ's review and consideration of the medical evidence in fashioning the RFC, which is supported by substantial evidence as discussed above.

> ### 2.  *Abousamra Fails to Show Reversible Error in the ALJ's Finding that He Did Not Meet Listing 12.03(C)*

Abousamra next argues that "the ALJ's assessment of [Listing 12.03(C)] was awash with errors and a misreading of the statute."  (ECF No. 15, PageID.1663).  In response, the Commissioner responds that Abousamra cannot show reversible error where he "never addresses the ALJ's analysis indicating that [Listing] 12.03(C)(2) was not satisfied," which is "a conjunctive requirement of paragraph C."  (ECF No. 18, PageID.1680).

Relevant here, to establish a disability under Listing 12.03(C), a claimant must

---

Abousamra's own function report indicating that he does household chores like  "mowing the lawn" and "taking the trash out," he can "go out alone," walk, drive, ride a car or bicycle, and use public transportation, he can "count change," "pay bills," and "use checkbook/money orders," he "watches YouTube videos" for "an hour at a time," and spends "most days" with his family watching movies together "a few times a week" or eating out "every once in a while," he does not handle stress well but otherwise follows written instructions "some[]what well," follows spoken instructions "easily" "most of the time," gets along with authority figures "very well," and handles changes in routine "decently well."  (ECF No. 9-6, PageID.455-59, 476).  Finally, as discussed above, there are at least two medical opinions from the state psychological consultants opining less restrictive limitations than those assessed by the ALJ.  (ECF No. 9-3, PageID.181, 231-32).  While certain records – at least as of their respective dates – no doubt reflect greater restrictions and impairments, the law is clear that where the ALJ's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at 286.

satisfy both paragraphs A and C of the listing:

> A. Medical documentation of one or more of the following:
>    1. Delusions or hallucinations;
>    2. Disorganized thinking (speech); or
>    3. Grossly disorganized behavior or catatonia; [AND]
>
> C. Your mental disorder in this listing category is "serious and
>    persistent;" that is, you have a medically documented history of the
>    existence of the disorder over a period of at least 2 years, and there
>    is evidence of ***both***:
>    1. Medical treatment, mental health therapy, psychosocial
>       support(s), or a highly structured setting(s) that is ongoing and
>       that diminishes the symptoms and signs of your mental
>       disorder (see 12.00G2b); ***and***
>    2. ***Marginal adjustment, that is, you have minimal capacity to
>       adapt to changes in your environment or to demands that
>       are not already part of your daily life (see 12.00G2c).***

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.03 (emphasis added).

Importantly, a claimant's impairment must meet *every* element of a Listing before

the Commissioner may conclude that he or she is disabled at step three of the sequential

evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*,

801 F.2d 847, 855 (6th Cir. 1986). It is the claimant who bears the burden to prove that *all*

of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974

(6th Cir. 1984).

The Court concurs with the Commissioner that Abousamra critically fails to raise

any specific challenge to the ALJ's determination regarding subpart (C)(2) of the Listing,

that "[t]he claimant has more than minimal capacity to adapt to changes in the environment

and to demands that were not already a part of daily life." (ECF No. 9-2, PageID.60). Such

failure to specifically address Listing 12.03(C)(2) amounts to a waiver of any challenge to

the ALJ's assessment of that element, and Abousamra therefore cannot meet *his* burden to prove that all elements of Listing 12.03(C) were satisfied.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the courts to . . . put flesh on its bones."); *see also Moats v. Comm'r of Soc. Sec.*, No. 20-00265, 2021 WL 2905079, at *18 (N.D. Ohio Jan. 8, 2021).[6]  Accordingly, Abousamra has failed to show any reversible error in this regard.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **GRANTED**, Abousamra's Motion for Summary Judgment **(ECF No. 15)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: January 3, 2023                    s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                          United States Magistrate Judge

---

[6] In any case, Abousamra fails to show that he met Listing 12.03(C)(2).  Not only does he fail to address head-on the ALJ's articulated reasoning that "he reported the possibility of moving to California to live with his brother," and that "the record established that claimant could handle self-care and personal hygiene, do light household tasks, do yardwork, handle changes in routine, drive, shop, use the computer, watch YouTube videos, edit videos, and get along with others" (ECF No. 9-2, PageID.60), Abousamra does not specifically challenge the ALJ's Step Two "paragraph B" findings that he has no more than a "moderate" limitation in any of the functional areas, including "adapting and managing oneself," which is supported by substantial evidence in the form of three medical opinions from Drs. Stelma, Csokasy, and Nnanji opining *mild* to *no* limitations in Abousamra's ability to adapt to changes (ECF No. 9-3, PageID.181, 231-32; ECF No. 9-8, PageID.1568).  Additionally, Abousamra indicated in his function report that he "handle[s] changes in routine" "decently well."  (ECF No. 9-6, PageID.459).

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 3, 2023.

s/Michael E.Lang
MICHAEL E. LANG
Case Manager